### McLAUGHLIN v. BROCK et ux.
### (No. 9391.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 6, 1920.)

**1. Mines and minerals ⬉75—Time for payment of extension rental under lease held of the essence.**

In view of provisions of oil and gas lease reciting a consideration of $50 for the first term and for the lessee's option of extending the period, time for payment of the rental of $25 for the extension of the lease beyond January 1, 1919, *held* of the essence of the contract.

**2. Mines and minerals ⬉75—Lease terminated on lessee's failure to make extension payment.**

Where an oil and gas lease made time for payment of an extension rental of the essence of the contract, the lessee's failure to make such payment when due terminated the lease ipso facto according to the terms of its stipulation to such effect that it should terminate on the given date if no well was commenced and the extension payment not made.

**3. Holidays ⬉4—Fact bank closed for holiday did not excuse oil and gas lessee from making extension rental payment.**

The fact that an oil and gas lessee could not deposit an extension rental payment in a bank for the lessors on the date of termination of the original term, as required by the lease, because the bank was then closed on account of the day being a legal holiday, did not prevent termination of the lease ipso facto under its stipulation for the lessee's failure to make such payment.

Appeal from District Court, Wood County; J. B. Keith, Judge.

Suit by A. P. Brock and wife against D. W. McLaughlin. From judgment for plaintiffs, defendant appeals. Affirmed.

---

Bryan, Stone & Wade, of Ft. Worth, for appellant.

Estes & Estes and Arrington & Robertson, all of Granbury, for appellees.

DUNKLIN, J. A. P. Brock and wife executed an oil and gas lease of date April 1, 1918, on 100 acres of land in Hood county, Tex., to C. H. Petty. The lease was transferred and assigned by Petty to W. H. Roach, and by Roach to D. W. McLaughlin. This suit was instituted by Brock and wife against W. H. Roach and D. W. McLaughlin to cancel that lease. Roach filed a disclaimer of any interest in the lease, leaving the plaintiffs and McLaughlin the only parties to the controversy.

Plaintiffs recovered a judgment canceling the lease, and McLaughlin has appealed.

The instrument sought to be canceled does not to purport to be a conveyance of the minerals in the land. The conveying clause reads as follows:

"That the said lessor, for and in consideration of fifty dollars, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, conveyed, demised, leased, and let and by these presents do grant, convey, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas and for laying pipe lines and of building tanks, power stations, and structures thereon to produce, save and take care of said products all that certain tract of land situated in the county of Hood, state of Texas, described as follows."

Then follows a description of the land.

Another provision in the lease reads as follows:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them is produced from. said land by the lessee."

Following that stipulation, the lease provides that the lessee, in consideration of the premises, convenants and agrees: First, to deliver to the lessor one-eighth of all the oil produced from the land. Second, to pay the lessor $150 per annum for gas used from each well where gas only is found, and to permit the lessor the use of the gas free of cost in his dwelling. Third, to pay the lessor $150 per annum for gas used by the lessee from any well producing oil.

The lease further contains the following provision:

"If no well be commenced on said land on or before the 1st day of January, 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank of Lipan, Texas, or its successors which shall continue as the depository regardless of changes in the ownership of said land, the sum of twenty-five dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 3 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

The plaintiffs alleged, and the proof showed beyond controversy, that no well was commenced on said land on or before January 1, 1919, and that McLaughlin failed to pay the $25 rental on or before that date for the privilege of deferring the commencement of a well for the period of three months from that date. But the proof further showed that on January 2, 1919, McLaughlin tendered to plaintiffs the sum of $25 to cover such rental, which tender was refused by the plaintiffs, who at the same time instructed the First National Bank of Lipan, Tex., not to accept said rental if same was offered by McLaughlin. After such refusal, McLaughlin deposited to plaintiffs' credit the $25 in the bank mentioned to cover the rental. But the plaintiffs refused to accept such deposit.

In his answer, McLaughlin alleged, and the proof showed without controversy, that his failure to pay the rental on or before January 1, 1919, was due to an oversight on his part; that he was ready, willing, and able to pay all the rentals stipulated in the lease necessary for a continuance of the same. It was further alleged and proven that on January 1, 1919, the bank mentioned was not open for business on account of the fact that that was a legal holiday. It was further alleged and proven that plaintiffs did not declare a forfeiture of the lease prior to the time McLaughlin tendered to them the $25 rental. Upon the facts so pleaded, he resisted plaintiffs' demand for a cancellation of the lease.

Only one assignment is presented by appellant, which is quite lengthy, reciting the pleadings and proof above noted, which we shall not attempt to set out in full, since the only purpose of the assignment is to present the contentions made by the following propositions and the authorities cited in support thereof, which are the only propositions submitted under the assignment:

First proposition. "The law looks with disfavor upon forfeitures, and will, when possible, so construe a contract and apply the facts as to avoid a forfeiture." Berryman v. Schumacher, 67 Tex. 312, 3 S. W. 46; Mullen v. International Life Ins. Co., 89 Tex. 259, 34 S. W. 605.

Second proposition. "Failure on the part of the lessee to pay the lease rentals on the date

of the maturity thereof does not ipso facto terminate the lease, but only gives the lessor an option to terminate it, which option must be exercised before the lessee has tendered payment." Evans v. Gas Co. (Ind.) 29 N. E. 398, 31 L. R. A. 673; Westmoreland Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731; Willis v. Gas Co., 130 Pa. 222, 18 Atl. 721, 5 L. R. A. 603.

Third proposition. "January 1, 1919, was a legal holiday, on which date the depository bank was closed, and lessors knew when they executed the lease that the bank would be closed on that day; the obligation to pay the rental falling due on the date, the lessee had all of the next day in which to make payment, and, tender of payment having been made on the next day, a forfeiture was avoided." Rev. Stats. art. 4606; Ætna Life Ins. Co. v. Wimberly, 108 S. W. 778; same case in Supreme Court, 102 Tex. 46, 112 S. W. 1038, 23 L. R. A. (N. S.) 759, 132 Am. St. Rep. 852; Hirshfield v. Ft. Worth Nat. Bank, 83 Tex. 452, 18 S. W. 743, 15 L. R. A. 639, 29 Am. St. Rep. 660; Negotiable Instruments Act Legislature, Regular Session 1919, p. 200, art. 6, § 85; National Council of Knights & Ladies of Security v. Rudler (Ind. App.) 121 N. E. 532.

[1, 2] We think it clear from the provisions of the lease that the time for the payment of the rental was of the essence of the contract. The leasee did not bind himself to pay said rental, but the payment of the same by him as a condition for the continuation of the lease was entirely optional with him, and having failed to pay the same the lease was terminated ipso facto according to the very terms of the stipulation quoted. Substantially the same questions presented here in the first two propositions of appellant were determined adversely to the contention now made by him in an opinion rendered by this court in the case of Weiss v. Claborn et al., 219 S. W. 884, in which it was held that a suit to cancel such a lease could not properly be termed a suit to declare a forfeiture under the strict equity rules invoked by appellant. And it was further held that, since the lease was by its very terms terminated for failure to pay the rental within the period of time required, plaintiffs' right to have the same terminated and canceled on that ground was not lost by their failure to declare a forfeiture prior to the time the defendant tendered the rentals. We shall not undertake to again review the authorities there discussed, but we adhere to the conclusions there expressed. And in addition to those authorities, we cite the following, which we think support the conclusions we reached in that case; Bailey v. Williams, 223 S. W. 311; Cockrum v. Christy, 223 S. W. 308; Ford v. Barton, 224 S. W. 268; Weatherford Machine & Foundry Co. v. Tate, 109 S. W. 406; Phillips Construction Co. v. Seymour, 91 U. S. 650, 23 L. Ed. 341; Dingley v. Oler, 117 U. S. 502, 6 Sup. Ct. 850, 29 L. Ed. 984.

[3] And we are of the opinion further that it could make no difference that defendant could not deposit the money in the bank on January 1, 1919, by reason of the fact that the bank was then closed on account of the day being a legal holiday. At all events that fact did not prevent the defendant from paying or tendering the rental to the plaintiffs themselves on January 1, 1919.

The authorities cited by appellant in support of his proposition that, by reason of the fact that January 1st was a legal holiday, he had the right to pay the rental on the following day, relate only to promissory notes and insurance policies; in other words, to contracts to pay money which are absolute and unconditional and not to mere options to pay or not to pay, such as we have in the present suit.

For the reasons indicated, the judgment of the trial court is affirmed.