## McCAMPBELL v. NEW YORK LIFE INS. CO., Inc.*

(Circuit Court of Appeals, Fifth Circuit. March 20, 1923. Rehearing Denied April 13, 1923.)

### No. 3991.

**1. Appeal and error ⬦═850(2), 926(1), 931(1)—Assumption that evidence was properly admitted and rejected, where no exception to rulings taken; on waiver of jury, review limited.**

Where no exception to any ruling of the trial court on admission or rejection of evidence is shown to have been taken, the appellate court will assume that all evidence offered was properly admitted, that no proper evidence was rejected, and that findings of fact were supported by the evidence; and where a jury was waived by stipulation in writing, investigation is limited to the single question whether the special findings of fact support the judgment, in view of Rev. St. §§ 649, 700 (Comp. St. §§ 1587, 1668).

**2. Insurance ⬦═349(1)—Premiums to be paid on date stated in policy.**

The date stated in a life policy as the anniversary and the date of payment of premiums controls, and the policy will lapse, unless premiums are paid on that date, or within the grace period thereafter, notwithstanding a provision in the policy that it does not become of effect until payment of the first premium, in which case it relates back to the date of application, and the fact that insured was not protected between the date of application and the date of payment of first premium is immaterial.

**3. Insurance ⬦═360(3)—Profits not used to extend life of policy under terms of policy.**

Where, under terms of life policy, profits were not to be apportioned until end of 20-year accumulation period, beneficiary was not entitled to claim that the life of the policy was extended by reason of earned profits before the expiration of the 20-year period.

**4. Appeal and error ⬦═931(4)—Assumed that notice of premium due not mailed, in absence of affirmative finding.**

In the absence of an affirmative finding that insurer mailed to the insured a notice stating when the premium would be due, it may be assumed on appeal that such notice was not mailed.

**5. Insurance ⬦═351—New York Laws as to notice of premium inapplicable as to policy holders outside of state.**

The New York statute (Insurance Law, § 92), providing that a life policy cannot be forfeited unless a notice is mailed to the insured at least 15 days before a premium is due, applies only to policy holders who live in the state of New York.

In Error to the District Court of the United States for the Western District of Texas; W. Lee Estes, Judge.

Action by Mary E. McCampbell against the New York Life Insurance Company, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

Hal Browne, of San Antonio, Tex., for plaintiff in error.

Eugene P. Locke, of Dallas, Tex. (Locke & Locke, of Dallas, Tex., and Louis H. Cooke, of New York City, on the brief), for defendant in error.

Before BRYAN and KING, Circuit Judges.

BRYAN, Circuit Judge. This is a suit on a life insurance policy, in which the plaintiff, Mary E. McCampbell, was named as beneficiary. The policy was issued by the defendant company on the life of plaintiff's husband, William T. McCampbell. The defense is that the policy lapsed for nonpayment of an annual premium. A jury was waived by stipulation in writing, and the trial was before the District Judge, in accordance with sections 649 and 700 of the Revised Statutes (Comp. St. §§ 1587, 1668). There was judgment for the defendant, and the plaintiff sues out this writ of error.

The court made special findings of fact, of which the following are considered material here:

The application for the insurance was dated January 31, 1901, and it was therein stipulated that the defendant should not be liable, unless the policy should be issued and the first premium paid during the lifetime and good health of the insured, but that the first premium, when paid, should relate back to the date of the application.

The policy was issued for $15,000 on the ordinary life plan. It was dated February 27, 1901, but the annual premiums of $478.65 were made payable January 31 of each year during its continuance. It provides: For the apportionment of the accumulated profits on January 31, 1921, if the insured should be then living and the premiums paid to that date, "and not otherwise." That if any premium or interest should not be duly paid, and if there should be an indebtedness to the company, the policy would be indorsed for such amount of paid-up insurance as any excess of the reserve over indebtedness would purchase according to the company's published table of single premiums, on written request within six months from the date to which premiums had been paid; but in the absence of such request for paid-up insurance the net amount that would have been payable as a death claim on the date to which premiums had been paid would automatically continue as term insurance from such date for such time as the excess of the reserve would purchase according to the company's table of single premiums for term insurance. That a grace of one month during which the policy should remain in full force would be allowed in payment of all premiums except the first, subject to an interest charge at the rate of 5 per cent. per annum. That the insured might secure a reinstatement of the policy at any time within 5 years after the nonpayment of any premium, "under the following conditions: Written application to the home office with evidence of insurability satisfactory to the company, payment of premiums from the date to which premiums were duly paid to the date of reinstatement, with interest at the rate of 5 per cent. per annum, and payment of reinstatement of any loans, including payment of any interest due and unpaid." That "in any distribution of surplus or apportionment of profits, the principles and methods which may be adopted by the company for such distribution or apportionment and its determination of the amount equitably belonging to this policy shall be conclusive upon the insured and upon all parties having or claiming any interest under this policy."

The defendant is a mutual life insurance company. McCampbell received the policy March 1, 1901, and then paid the first premium. He

paid all premiums thereafter, up to and including the premium due in 1917. February 28, 1917, McCampbell and his wife, the plaintiff, applied for and obtained a cash loan of $4,635 on the security of the policy, and executed and delivered to the company a loan agreement, whereby they agreed to pay interest at 5 per cent. per annum from that date until the next anniversary; that the loan should become payable if any premium or any interest on the loan should not be paid when due, in which event the indebtedness, without demand or notice, should be satisfied in the manner provided in the policy.

The premium for 1918, the loan, and the interest thereon remained unpaid on February 28, 1918. McCampbell by letter, dated February 18, 1918, requested of the company a statement of the best settlement he could make on the premium, "due January 31, 1918," and interest on the loan, and stated he did not think he would be able to pay the premium and interest in full. This letter was mailed from San Antonio, Tex., to the company's home office in New York City, and forwarded to its St. Louis office for attention. The cashier of the St. Louis office on February 27 wrote to McCampbell, acknowledging receipt of his letter, and stated that the maximum amount available as a loan on the policy was $4,950. The letter contained the statement requested, and shows the fact that after making a new loan there would be a balance of $412.87 due the company on the premium and loan. A form of loan agreement was inclosed. We quote from the court's findings the following paragraph:

"In due course of mail, it would have been possible for the defendant to have answered the letter written by McCampbell on February 18 in time for the answer to reach McCampbell before February 28. A letter mailed from San Antonio on February 18 would reach New York and be delivered on February 21 or 22; a letter mailed from New York to St. Louis would reach St. Louis and be delivered on the second day after its mailing; and a letter mailed from St. Louis to San Antonio would reach San Antonio and be delivered on the second day after its mailing. February 24, 1918, was Sunday."

March 12 the St. Louis office again wrote to McCampbell that, inasmuch as he had failed to forward the loan papers or the remittance required, his policy had lapsed, and that before the company would accept any settlement it would be necessary for him to furnish his personal certificate of health. A form for such certificate was enclosed, and McCampbell was requested to remit $413.57 as the amount then necessary to pay premium and interest on loan. March 29, McCampbell acknowledged receipt of the company's letter of March 12, and inclosed his check, together with the loan papers, and the health certificate. March 31 was Sunday. April 2 the St. Louis office acknowledged receipt of McCampbell's letter of March 29, sent to him a temporary receipt for the remittance, and advised him that his answer to one of the questions in the health certificate was incomplete, and also that his remittance had been delayed so long that a small additional amount of interest was then due.

There was subsequent correspondence with reference to re-instatement of the policy, but it is unnecessary to review it. It is sufficient to say that McCampbell was in such physical condition that he was un-

able to furnish a satisfactory health certificate, and that he died May 10, 1918, at his residence in San Antonio. It had been defendant's custom to accept his checks in payment of premiums. No evidence was offered that any premium notice had been sent by the defendant to McCampbell.

McCampbell never lived in the state of New York. He had received no profits or dividends from his policy. The entire reserve on the policy, as of January 31, 1918, was $4,648.35, and exceeded the indebtedness thereby secured by $13.35. This last-named sum was applied by the company in extension of the insurance, and it was sufficient to extend the same for 17 days. McCampbell would have been 40 years old on August 13, 1901. The annual premium which he paid was assessed at age 39. It would have amounted to $495.15 at age 40, a difference of $16.50. McCampbell did not surrender the policy to the company when he obtained the loan. He had it in his possession when he wrote to the company to ascertain the amount which could be borrowed thereon. The policy itself discloses that its loan value on January 31, 1918, was $330 per thousand, or $4,950.

The contentions of the plaintiff upon her assignments of error are: (1) That the annual premium for 1918 was paid, and that such payment was made within the period of grace stipulated in the policy; (2) that the policy had earned sufficient reserve, or was entitled to be credited with sufficient profits, to extend the insurance beyond the date of death of the insured; (3) that the defendant was estopped, by reason of its delay in replying to the insured's letter of February 18, 1918, to claim that the policy had lapsed for nonpayment of premium or interest on loan; and (4) that it was not made to appear that the defendant had mailed to the insured a notice stating when the premium would be due, as required by a statute of New York, which it is claimed is applicable to the facts of this case.

[1] A bill of exceptions is incorporated in the record, and counsel on both sides make frequent reference to it in their briefs. No exception to any ruling of the trial court upon admission or rejection of evidence is shown to have been taken. We therefore assume that all evidence offered was properly admitted, that no evidence was improperly rejected, and that the findings of fact by the District Judge were supported by the evidence. Under sections 649 and 700 of the Revised Statutes, our investigation is limited to the single question whether such special findings of fact support the judgment. Stanley v. Albany County, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Preston v. Prather, 137 U. S. 604, 11 Sup. Ct. 162, 34 L. Ed. 788. See also White v. Thacker, 78 Fed. 862, 24 C. C. A. 374, and Sarrazin v. Irby Cigar Co., 93 Fed. 624, 35 C. C. A. 496, 46 L. R. A. 541, decided by this court. Consequently the bill of exceptions serves no purpose in this case.

[2] 1. It is contended that the remittance by the insured on March 29, 1918, although accompanied by an application for reinstatement of the policy, was in reality a payment of the premium, and was forwarded within the stipulated period of one month's grace; because, as it is said, the policy was delivered on March 1, 1901, and the sub-

sequent annual premiums were not required to be paid until March 1 of each year, or within one month thereafter. It is argued that this necessarily follows from the provision in the application that it is a condition precedent to the company's liability that the policy should be issued and the first premium paid during the lifetime and good health of the applicant, and that to require the first premium to cover a period prior to the beginning of such liability would be to require an insured to pay for insurance which he did not obtain. A conclusive answer is that parties are entitled to make their own contracts. It is true that, if the insured in this case had died before March 1, 1901, liability under the policy would not have attached. But the insured, by agreeing that January 31 should be the anniversary of the policy, and that premiums should be paid on that day, or by February 28 of each year, during the life of the policy, secured insurance as of the age 39, instead of 40, and thereby was required to pay $16.50 per annum less than he would have been required to pay if the policy had been issued to him after February 13, 1901. January 31 of each year was recognized by both the insured and the insurer as the date upon which premiums were required to be paid. If the contention of the plaintiff should prevail, it would cause untold confusion. Under the terms of the policy the insured would have been entitled to profits accruing thereon if he had lived until January 31, 1921. Under the contention now advanced, the company would have had the right to refuse to pay such profits until March 1, 1921, and if the insured had died between these two dates, the policy would not have been entitled to participate in such profits. The business of life insurance is conducted upon the theory that premiums will be promptly paid. Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Insurance Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204. The time when a premium is due should be definite, and that cannot be if the date upon which the first premium was in fact paid should fix the dates upon which subsequent premiums should be paid. Therefore the date mentioned in the policy for the payment of premiums. governs. The date when the first premium was paid, which is almost always uncertain, and in most instances impossible of ascertainment, is immaterial. McConnell v. Life Assurance Society, 92 Fed. 769, 34 C. C. A. 663; Johnson v. Life Insurance Co., 143 Fed. 950, 75 C. C. A. 22; Wilkie v. Insurance Co., 146 N. C. 513, 60 S. E. 427; Jewett v. Insurance Co., 149 Mich. 79, 112 N. W. 734; Tibbits v. Insurance Co., 159 Ind. 671, 65 N. E. 1033; Methvin v. Fidelity Mutual Life Association, 129 Cal. 251, 61 Pac. 1112; Forch v. Life Indemnity Co., 157 Ill. App. 244. The plaintiff relies upon McMaster v. Insurance Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64. That case was based upon the unauthorized insertion by the insurance company's agent of the words "please date policy the same as application," and upon the representation that the insurance became effective upon delivery of the policy. The facts of the cited case distinguish it from the case at bar.

[3] 2. After deducting the loan on the policy, the reserve amounted to only $13.35, which, if applied in accordance with the terms of the policy, would extend the insurance only 17 days. But it is claimed

the policy had earned profits which should have been applied to extend the insurance. This policy, as agreed in the application, was to be construed according to the laws of New York. Under its terms, the profits were not to be apportioned until January 31, 1921, the end of the 20-year accumulation period, and the amount thereof as determined by the defendant would have been conclusive upon the insured. These terms, as applied to mutual life insurance companies such as the defendant is, have been upheld by the Court of Appeals of New York and by the Supreme Court of the United States. Uhlman v. New York Life Insurance Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482; Equitable Life Assurance Society v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682. A contrary ruling by the Court of Appeals of Kentucky in Insurance Co. v. Spinks, 126 Ky. 405, 103 S. W. 335, 31 Ky. Law Rep. 185, has been in effect, though not in terms, overruled in Jefferson v. Insurance Co., 151 Ky. 609, 152 S. W. 780. It therefore follows that the policy in suit was not entitled to be credited with any share of the profits.

3. It does not appear when the letter of the insured, dated February 18, 1918, was mailed. If it was mailed promptly, and there was no delay in transmission, according to the court's finding, it would have reached New York on February 21 or 22. The latter day was a holiday, and in the ordinary course of business the letter would not have received attention until Saturday, February 23. If there was a delay in mailing, or in transmission, the letter would probably not have reached New York so as to receive attention until Monday, February 25, in which event the reply from St. Louis was made as early as possible, and without any delay whatever. Under these circumstances, it certainly cannot be held as a matter of law that the defendant was estopped to claim that the premium was not paid prior to February 28, the date of expiration of the month's period of grace.

[4, 5] 4. In the absence of an affirmative finding that the defendant mailed to the insured a notice stating when the premium would be due, it may be assumed that such notice was not mailed. The plaintiff insists that under the laws of New York (Insurance Law [Consol. Laws, c. 28], § 92) a life insurance policy cannot be forfeited unless a notice is mailed to the insured at least 15 days before a premium is due. The statute only applies to policy holders who live in the state of New York. Insurance Co. v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181; Insurance Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788; Insurance Co. v. Bradley, 98 Tex. 230, 82 S. W. 1031, 68 L. R. A. 509.

Error is not made to appear by any of the assignments, and the judgment is affirmed.

WALKER, Circuit Judge, took no part in the decision of this case.